UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-80188-ROSENBERG/REINHART

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MARK PAOLANTONIO,

    Defendant.
_____/

## DEFENDANT PAOLANTONIO'S MOTION FOR DOWNWARD DEPARTURE OR VARIANCE

The defendant, Mark Paolantonio, through counsel, respectfully files this Motion for Downward Departure or Variance, and in support thereof, states:

### GENERAL SENTENCING PRINCIPLES

While the advisory "[g]uidelines should be the starting point and the initial benchmark," they are "not the only consideration." *Gall v. United States*, 552 U.S. 38, 49 (2007). So while this Court must begin by calculating the applicable advisory Guidelines range, it also has broad discretion to impose a sentence far below that range. *See id.* at 49-51; *see also generally United States v. Booker*, 543 U.S. 220 (2005). It may sentence below the advisory Guidelines range either (a) because "the case at hand falls outside 'heartland' to which the [Sentencing] Commission intends individual guidelines to apply, U.S.S.G. § 5K2.0," i.e., a downward departure, or (b) because "the Guidelines sentence itself fails properly to reflect the § 3553(a) considerations," i.e., a variance. *Rita v. United States*, 551 U.S. 338, 351 (2007).

After considering the Guidelines, a sentencing court "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [she] may not presume that the Guidelines range is reasonable. [She] must make an individualized assessment based on the factors presented." *Gall*, 552 U.S. at 49-50. This is based on the "federal judicial tradition" that a court "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Id*. at 52; see also *United States v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006) (stating "a district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence").

Section 3553(a) provides that, "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." That section requires the district court to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, afford adequate deterrence, protect the public from further crimes, and provide the defendant with needed rehabilitation; (3) the kinds of sentences available; (4) the Guidelines; (5) any policy statements; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

## APPLICATION OF § 3553(a) FACTORS

### A. The History and Characteristics of the Defendant

Mr. Paolantonio was adopted as an infant, and he never knew his biological parents. (DE197:¶178). His adoptive parents divorced when he was 7 years old. (DE197:¶178). Despite growing up in a split family, he received support from both parents, as well as his stepfather. (DE197:¶179). As his parents and stepfather aged, Mr. Paolantonio became the caretaker for each one of them in turn. (DE197:¶180).

Mr. Paolantonio will turn 63 years old this November. (DE197: 3). He has significant health issues, including lasting complications from a previous stroke, heart attack, and back injury. (DE197:¶211). As a child, he was accidentally shot in the eye with a BB-gun. (DE197:¶190). He underwent four eye surgeries and received an ocular implant. (DE197:¶190). He continues to experience severe vision loss in his left eye, eye pain and pressure, and headaches. (DE197:¶190). He has experienced several severe car accidents that have caused head injuries. (DE197:¶191). He has been diagnosed with atrial fibrillation, does not have a normal rhythm to his heart beat, and must avoid extreme heat. (DE197:¶192). Mr. Paolantonio has sustained several serious back injuries which have greatly diminished his mobility. (DE197:¶193). He suffers from high blood pressure and high cholesterol. (DE197:¶194). He takes 11 different prescriptions for his various health complications. (DE197:¶196). Due to his health issues, Mr. Paolantonio has been disabled and unable to work for approximately 11 years. (DE197: ¶211).

The Office of the Inspector General ("OIG") considers inmates aged 50 years and older to be aging inmates. The Impact of an Aging Inmate Population on the

Federal Bureau of Prisons, Office of the Inspector General, United States Department of Justice (revised Feb. 2016), i, available at https://oig.justice.gov/reports/2015/e1505.pdf (last visited October 17, 2023). The OIG based this definition, in part, on a study in the American Journal of Public Health which states "that an inmate's physiological age averages 10-15 years older than his or her chronological age due to the combination of stresses associated with incarceration and the conditions that he or she may have been exposed to prior to incarceration." *Id.* at 1-2. The OIG found that medical spending per inmate within each institution correlated with the percentage of aging inmates at an institution, and in fiscal year 2013, the cost per inmate at the five institutions with the highest percentage of aging inmates was more than 5 times as expensive as the cost per inmate at the five institutions with the lowest percentage of aging inmates. *Id.* at 12. The OIG also found that Bureau of Prisons ("BOP") institutions lack appropriate staffing levels and provided limited training to address the needs of its aging inmate population. *Id.* at 51.

Several courts have recognized the propriety of non-incarcerative sentences for older offenders or offenders with poor physical health. *See, e.g., United States v. Wadena*, 470 F.3d 735 (8th Cir. 2006) (affirming sentence of probation despite guideline range of 18 to 24 months for 67 year old defendant who suffered from chronic health conditions, including hypertension, hearing loss, cataracts, and diabetes). In *McFarlin*, the Eighth Circuit affirmed a sentence of probation where the defendant's guideline range would have been 97 to 121 months, except he faced only

a 5 years statutory maximum sentence. *United States v. McFarlin*, 535 F.3d 808, 809-810 (8th Cir. 2008). In that case, the defendant was 56 years old, but was taking 11 prescription drugs, multiple forms of eye drops, and suffered from sleep apnea, high blood pressure, gout, diabetes, a nerve root disease, asthma, and bronchitis. *Id.* at 810-811. Similarly, in Coughlin, the court imposed a sentence of 5 years of probation with 27 months home detention despite a guideline range of 27 to 33 months for a defendant with significant health issues, including prior sudden cardiac death, diabetes, and severe allergies. *United States v. Coughlin*, 2008 WL 313099 (W.D. Ark. Feb. 1, 2008) (unpub.).

Due to Mr. Paolantonio's age and significant health problems, a sentence of probation in this case is sufficient but not greater than necessary to achieve the goals of sentencing. Mr. Paolantonio's conditions would make him more expensive for the BOP to house and care for, and would also make him more susceptible to abuse from other inmates and vulnerable to the environmental conditions of confinement. A probation sentence will allow him to continue to receive the medical treatment he is successfully provided in the community.

### B. The Nature and Circumstances of the Offense

Mr. Paolantonio was charged with non-violent offenses. Mr. Paolantonio was used by his codefendant who was looking to avoid law enforcement scrutiny of his illegal actions. Mr. Paolantonio was living on a fixed income, needed a place to stay, and was taken in by his codefendant. When his codefendant's father needed someone to act as his caregiver, Mr. Paolantonio took care of him. Just as Mr. Paolantonio had done for his own parents and his stepfather. Mr. Paolantonio's criminal liability in

this case is dwarfed by that of his codefendant, and Mr. Paolantonio's limited role supports a sentence of probation.

### C. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment

Mr. Paolantonio's advisory guideline range is 10 to 16 months. This Court can enter a sentence significantly below this advisory range while also achieving the important sentencing goals of reflecting the seriousness of the crime, promoting respect for the law, and providing just punishment for the offense. A sentence of probation can achieve these purposes.

### D. The Need to Provide General and Specific Deterrence

Mr. Paolantonio has zero criminal history points. The Sentencing Commission has recognized that such offenders have the lowest recidivism rates of all offenders, and it has explained:

> The analysis delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system. Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points.

Recidvisim and the "First Offender", United States Sentencing Commission (May 2004), at 17, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (last visited Aug. 23, 2023).

Mr. Paolantonio also poses a lower risk of recidivism due to his age. The United States Sentencing Commission has found that while offenders under age 21 have a 35.5 percent recidivism rate, those over 50 have a recidivism rate of just 9.5 percent.

Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, United States Sentencing Commission (May 2004), *12, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (last visited October 17, 2023). For offenders over 50 with a criminal history category of I, the recidivism rate was even lower at 6.2 percent. *Id.* at 28. Because he poses less of a risk of recidivism, a sentence of probation provides adequate deterrence in this case.

A sentence of probation still results in adequate general deterrence. Mr. Paolantonio has already been convicted in this case. This has resulted in his loss of his civil rights, including his right to vote and to possess firearms. He has been supervised on pretrial release for approximately 9 months. (*See* DE32). These restrictions on his freedom, and the restrictions that will continue with probation, provide general adequate deterrence.

### E. The Need to Provide the Defendant with Training, Medical Care, and Other Correctional Treatment

"[I]mprisonment is not an appropriate means of promoting correction and rehabilitation." § 3582(a). Thus, a court cannot increase a sentence to provide rehabilitation. *Tapia v. United States*, 564 U.S. 319 (2011). Mr. Paolantonio would benefit from continued mental health treatment. (DE197: ¶201). Mr. Paolantonio requested that mental health treatment be added to his bond conditions. (DE92). He has participated in that treatment since February 2023, (DE197: ¶201), and he would benefit from continuing that treatment while serving a probationary sentence. Imposing a sentence of probation in this case will ensure that his treatment is not

interrupted and that Mr. Paolantonio will continue to receive the support he needs to continue to comply with his conditions of supervision.

**F. The Kinds of Sentences Available, the Advisory Guidelines Range, and Pertinent Policy Statements**

Currently, the advisory guidelines range is 10 to 16 months. (DE197: ¶222). However, Mr. Paolantonio is a zero point offender. (DE197: ¶169). The Sentencing Commission has adopted an amendment, which adds a 2-level reduction for certain zero-point offenders. In relevant part, this amendment provides:

§4C1.1. Adjustment for Certain Zero-Point Offenders

(a) ADJUSTMENT.—If the defendant meets all of the following criteria:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

>   (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
>
>   (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;
>
> decrease the offense level determined under Chapters Two and Three by 2 levels.

Amendment for Certain Zero-Point Offenders, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf (last visited Aug. 23, 2023). Several other district courts in this district have already applied a variance in cases where a defendant would qualify for this adjustment in the future. See, e.g., *United States v. Cristian Pena Encarnacio*, 22-CR-20422-Middlebrooks; *United States v. Wilfredo Robles*, 22-CR-20494-Scola; *United States v. Soami Tatiana Mera Palomino*, 22-CR-20501-Bloom; *United States v. Alejandro Catano Velasquez*, 22-CR-60207-Singhal; *United States v. Isaac McNeal*, 22-CR-20467-Gayles; *United States v. Luckny Vincent*, 23-CR-80027-Rosenberg; *United States v. Carlos Sablon*, 22-CR-20341-Martinez; *United States v. Suze Desrosiers*, 23-CR-60097-Altman.

In addition to adding an adjustment for zero point offenders, the Sentencing Commission has also adopted an amendment to the application notes for §5C1.1 in order to promote more sentences other than sentences of imprisonment for such offenders. This new note 10 provides:

> Zero-Point Offenders.—
>
> (A) Zero-Point Offenders in Zones A and B of the Sentencing Table.—If the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range is in Zone A or B of the Sentencing Table, **a sentence other than a sentence of imprisonment**, in accordance with subsection (b) or (c)(3), **is generally appropriate**. See 28 U.S.C. § 994(j).
>
> (B) Departure for Cases Where the Applicable Guideline Range Overstates the Gravity of the Offense.—**A departure, including a departure to a sentence other than a sentence of imprisonment, may be appropriate** if the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range overstates the gravity of the offense because the offense of conviction is not a crime of violence or an otherwise serious offense. See 28 U.S.C. § 994(j).

Amendment for Certain Zero-Point Offenders, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf (last visited Aug. 23, 2023) (emphasis added). Thus, those in the newly recognized category of zero point offenders should receive not only an adjustment to their recommended range, but also should be receiving non-incarcerative sentences more often than they previously have. Consideration of these amendments to the guidelines to account for individuals who, like Mr. Paolantonio, have zero criminal history points supports the appropriateness of a probationary sentence in this case.

### G. The Need to Avoid Unwarranted Sentencing Disparities

The PSI calculates a total offense level of 12 and a criminal history category of I for a guideline range of 10 to 16 months. (DE197: ¶222). From fiscal year 2018 through fiscal year 2022, excluding defendants who received § 5K1.1 substantial

assistance departures, nationally there were 55 defendants who had U.S.S.G. § 2S1.1 as their primary guideline and a total offense level of 12 and a criminal history category of I. United States Sentencing Commission, Judiciary Sentencing INformation (JSIN), available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited Aug. 23, 2023). Of these 55 similarly situated defendants, more than half, or 53%, received probation or a fine only. *Id*. During this same time period there were 26 defendants with § 2S1.1 as their primary guideline, a total offense level of 10, and a criminal history category of I. *Id*. Adjusting for the two point reduction for zero point offenders that Mr. Paolantonio would be eligible for after November 2023, these offenders are an even more appropriate comparative group for Mr. Paolantonio. Among these offenders, approximately three quarters, or 73%, received a sentence of probation or a fine only. *Id*. A sentence of probation in this case is consistent with the sentences received by similar offenders for similar conduct and avoids the unwarranted sentencing disparity that would occur with a guidelines sentence in this case.

### H. The Need to Provide Restitution to Victims

There is no identifiable victim in Mr. Paolantonio's case. (DE197: ¶153). Therefore, this factor is not applicable in this case.

*    *    *

Wherefore, the Defendant, Mark Paolantonio, respectfully requests that this Court sentence him to probation.

Respectfully submitted,

MICHAEL CARUSO

FEDERAL PUBLIC DEFENDER

By: *s/M. Caroline McCrae*
Caroline McCrae
Assistant Federal Public Defender
Attorney for Defendant
Florida Bar No. 72164
250 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
(561) 833-6288 - Telephone
*Caroline_mccrae@fd.org* - Email

**CERTIFICATE OF SERVICE**

I HEREBY certify that on October 17, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/M. Caroline McCrae*
M. Caroline McCrae