UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cr-80188-Rosenberg/Reinhart

UNITED STATES OF AMERICA,

v.

MARK PAOLANTONIO,

       Defendant.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON SUPERSEDING PETITION FOR OFFENDER UNDER SUPERVISION [DE 386]**

The Defendant, MARK PAOLANTONIO, appeared before the Court on September 6, 2024, for a contested final hearing on the Superseding Petition for Offender under Supervision ("Superseding Petition") [DE 386]. Defendant was originally convicted in the Southern District of Florida of money laundering—bank fraud, in violation of 18 U.S.C. § 1956-4601.F. October 26, 2023, the Honorable Robin L. Rosenberg, United States District Judge, sentenced Defendant to three years of probation with several special conditions. Defendant's term of supervision commenced on October 26, 2023. On November 16, 2023, the Court agreed with the U.S. Probation Officer's recommendation of no further action and allowing Defendant to attend mental health treatment and weekly drug testing following Defendant's positive urinalysis for marijuana.

Defendant is now charged, pursuant to the Superseding Petition [DE 386], with ten different violations. Violations # 1-9 allege that Defendant violated a mandatory condition by unlawfully possessing or using a controlled substance—marijuana. According to the Superseding Petition, Defendant's urine specimens testified positive for marijuana and were confirmed positive

1

by Alere Toxicology Services Inc. ("Alere"), on October 27, 2023; December 6, 2023; January 9, 2024; January 12, 2024; January 26, 2024; February 2, 2024; February 9, 2024; February 16, 2024; February 23, 2024; March 1, 2024; March 8, 2024; March 15, 2024; March 22, 2024; March 29, 2024; April 5, 2024; April 12, 2024; April 19, 2024; April 26, 2024; May 3, 2024; May 13, 2024; May 24, 2024; May 31, 2024; June 7, 2024; and June 14, 2024. Additionally, Violation # 10 alleges that Defendant violated a standard condition by failing to follow the instructions of the probation officer. Specifically, on October 30, 2023, Defendant was instructed to submit to weekly drug testing, and, on November 3, 9, 17, 22 and December 1, 2023, he failed to comply.

## Final Hearing

### 1. Government's Case

At the September 6, 2024 final hearing, the Government called U.S. Probation Officer Heath Schur to testify as its sole witness. Additionally, the Government offered Government's Exhibit 1, which was ultimately admitted over defense objection, as discussed in greater detail below.

Government Exhibit 1 is a composite exhibit consisting of documents from Alere Toxicology Inc. For each of Defendant's urine tests, there is a "Chain of Custody for Drug Analysis Federal Pretrial Services" page, which lists the name of the individual or entity who collected the specimen and the date collected. Then, for each of Defendant's urine tests, there is additionally a "Drug Test Report" stating whether the sample was positive or negative for marijuana and listing the name of the certifying technician/scientist from Alere. The documents relate to over 25 different drug tests administered on Defendant.[1]

---

[1] Of those drug tests, 25 were positive results, one was a negative result, and one was rejected on the basis that the sample could not be properly tested.

2

The remainder of the evidence presented at the final hearing came from Officer Schur's testimony. Officer Schur testified as follows. He has been a probation officer for over 22 years and was assigned to supervise Defendant approximately 11 months ago. Officer Schur has overseen more than 3,000 drug tests during his career as he specializes in a drug treatment caseload. Additionally, he communicates with the local lab in Miami and with Alere Toxicology, which both have had long-standing contracts with U.S. Probation in the Southern District of Florida, and he is educated on the mechanics of drug tests and confirmations. If the local lab in Miami determines twice that a urine specimen is positive for illegal drugs, the specimen goes to Alere in Louisiana for confirmation. Alere results have never been found to be incorrect in the approximately 10 years the AO has contracted with Alere, and courts generally accept Alere's results. Additionally, Officer Schur attends meetings regarding drug testing, and there has been no mention of issues with the testing protocols.

In this case, Defendant had an initial positive drug test for marijuana when he began his probation on October 27, 2023. Therefore, he was placed on the weekly drug testing protocol. He has been tested approximately 20 to 30 times and has missed some of his required drug testing appointments. Each time Defendant is tested, the results are emailed to Officer Schur and automatically placed in Defendant's electronic case file. While Officer Schur is always aware when Defendant is in the U.S. Probation Office for drug testing, Officer Schur does not always collect Defendant's urine sample and/or handle the drug tests himself; rather, there is a team approach in the office. Whoever collects the sample verifies Defendant's identification and has the specimen couriered to the local lab in Miami in a secure bag. Therefore, there is a clear chain of custody.

As stated above, Defendant tested positive for the first time on October 27, 2023. Officer Schur spoke to Defendant about his marijuana use multiple times, including after that first positive drug test. Initially, Defendant promised he would abstain from further use, so Officer Schur wrote a status report to the Court and referred Defendant to substance abuse treatment.

The initial Petition in this case was filed December 14, 2023, as Defendant continued to use marijuana. In February and March 2024, Defendant admitted to having used marijuana and promised to abstain. In April 2024, Defendant explained to Officer Schur that he had thrown a party because he was being evicted and had smoked marijuana with others at that party. In June 2024, he told Officer Schur that, since the U.S. farmed and taxed marijuana, he was going to smoke it and was not going to follow hypocritical rules. At another time, Defendant stated to Officer Schur that he had moved to Stuart, there was a marijuana dispensary across the street, and he intended to get marijuana there.

At each of his criminal hearings in this case, Defendant told the presiding U.S. Magistrate Judge that he would stop using marijuana, but then he would tell Officer Schur that he had resumed use. Officer Schur last spoke to Defendant in August 2024, at which time Defendant said he was no longer using marijuana. Defendant's last drug test was on August 1, 2024, at which time he had stopped reporting to the U.S. Probation Office weekly even though weekly drug tests were a bond condition. Furthermore, Defendant did not come in for weekly drug testing in November and December 2023, as asserted in the Superseding Petition.

Overall, Defendant has admitted marijuana use on several occasions and has sometimes denied it between December 2023 and June 2024. However, in Officer Schur's experience, 10 months of positive tests cannot be due to residual levels of marijuana. Finally, Defendant

4

previously possessed a Florida medical marijuana card; however, it has since expired.

### 2. Defense Objections

On September 5, 2024, the day before the final hearing, the Government and defense counsel each filed memoranda [DEs 408, 409] regarding the admissibility of hearsay evidence at the final hearing. Defendant's counsel objected to Government's Exhibit 1 as inadmissible hearsay and also objected throughout the course of Officer Schur's testimony and moved to strike his testimony at the conclusion of the Government's direct examination. The Court admitted Exhibit 1 over objection and also denied Defendant's motion to strike Officer Schur's testimony. This Report and Recommendation shall lay out the reasons for the Court's rulings.

As an initial matter, the Eleventh Circuit has explicitly held that the holding of *Crawford v. Washington*, 541 U.S. 36 (2004), "interprets rights guaranteed by the Sixth Amendment, which has not been interpreted to apply to supervised release revocation proceedings." *United States v. Geathers*, 297 F. App'x 885, 886 (11th Cir. 2008). The Supreme Courts' holdings in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Smith v. Arizona*, 144 S. Ct. 1785 (2024), thus do not apply in this specific case where the Court held a final hearing regarding Defendant's alleged violations of supervision.

Rather, the relevant law in this specific context is as follows. "Although the Federal Rules of Evidence do not apply in supervised release revocation hearings, the admissibility of hearsay is not automatic." *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). "Defendants involved in revocation proceedings are entitled to certain minimal due process requirements." *Id.* "Among these minimal requirements is the right to confront and cross-examine adverse witnesses." *Id.* The Eleventh Circuit in *Frazer* set forth the following balance test in the supervised release final

hearing context: "Thus, in deciding whether or not to admit hearsay testimony, the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation. . . . In addition, the hearsay statement must be reliable." *Id.* Based on the foregoing, and as agreed by both the Government and Defendant in open court, before admitting hearsay statements at final hearings on violations of supervision, courts are required to both (1) determine the reliability of the hearsay statement <u>and</u> (2) balance the defendant's right to confront adverse witnesses against the grounds asserted by the Government for denying confrontation.

Taking into account this law, defense counsel argued at the final hearing that the Court was required to employ this balancing test and that the Government could not rely on other inadmissible evidence to bootstrap its arguments in favor of admitting hearsay. Additionally, defense counsel argued that the Court had to employ the requisite balancing test as to each individual piece of testimony and evidence and should not be permitted to make a generalized ruling as to all testimony and/or the entirety of Exhibit 1.

Here, the Court did consider the applicable law. Pursuant to *Frazier, supra*, the Court first considered the reliability of Exhibit 1 and noted the large number of positive drug test results which occurred between August 2023 and August 2024.[2] The large number of positive drug tests are strong corroboration of the accuracy and reliability of the drug tests in this case. Additionally, the Court emphasized that Defendant himself made admissions that he was using marijuana and would continue to use it on multiple occasions, all of which corroborates the positive drug tests results. "As to reliability, courts have found that hearsay evidence is reliable where it has been

---

[2] As noted above, the Alere documents contained in Government's Exhibit 1 evidence 25 total positive drug tests, one negative drug test, and one rejected sample.

corroborated." *United States v. Hathaway*, No. 08-80077-CR, 2011 WL 5320985, at *2 (S.D. Fla. Oct. 18, 2011), *report and recommendation adopted,* No. 08-80077-CR, 2011 WL 5295318 (S.D. Fla. Nov. 3, 2011); *see also United States v. Morris*, 140 F. App'x 138, 142 (11th Cir. 2005) (holding that the report relied upon by USPO prepared by a case worker at a halfway house was reliable because it was regularly kept in the course of business). Here, there was clear corroboration. In sum, the Court found Exhibit 1 to be highly reliable based on the circumstantial evidence of over 20 positive drug tests and based on the direct evidence of Defendant's admissions to marijuana use. The Court also noted that courts in this District rely regularly on Alere's test results and that the Court was not personally aware of a time when Alere's drug test results were inaccurate. Moreover, the Court maintained that the "Drug Test Reports" simply explain whether the urine samples were positive for drugs and gave no additional substantive information.

Next, the Court balanced Defendant's right to confront adverse witnesses against the grounds asserted by the Government for denying confrontation. The Court pointed out that the Government did produce Officer Schur, an officer with over 22 years of experience and extensive personal experience with and knowledge about the drug test system. The Court finds Officer Schur's testimony to be credible and reliable. As to defense counsel's argument that every single probation officer or entity listed in the "Chain of Custody for Drug Analysis Federal Pretrial Services" sections of Exhibit 1 should have been called into the hearing to testify live, the Court rejected this argument as the chain of custody, the collectors, and the drug tests dates were clear, and the probation officers and entities would not provide other relevant information. Requiring the Government to call those witnesses at the final hearing would be a complete waste of time and would not serve the interests of justice. The Court explained that the testimony of the other

7

collectors of specimens in the U.S. Probation Office would not have been probative and that it would have been wasteful for the Government to call every single collector.[3] The Court concluded that Defendant's right to confrontation was not impinged by the Government's decision not to call every urine specimen collector because the Government's asserted grounds for not calling every single collector outweighed Defendant's right to confront adverse witnesses.

Regarding the Alere lab analyst witnesses, Defendant's counsel, AFPD Carolyn McCrae, first represented to the Court, orally and in writing, that the Supreme Court's decision in *Melendez-Diaz, supra,* was a case which required the Government to produce the lab technician employees from Alere to testify at the final revocation hearing. [DE 408 at 2]. But then, in defense counsel's final argument, she represented to the Court that she never mentioned or relied on *Crawford,* even though *Melendez-Diaz* cited and followed the *Crawford* line of case law. Defendant's effort to take a case involving a Defendant's Sixth Amendment right to confrontation at a criminal trial, like *Melendez-Diaz*, and incorrectly argue it applies to a final revocation hearing, is meritless. The Undersigned is fully aware of a defendant's confrontation clause rights at a criminal trial.[4] And, if this were a criminal trial, then the Government would be required to call the Alere lab analysts. However, Defendant's effort to attach the Sixth Amendment **trial** right of confrontation of a defendant to a post-trial final violation hearing misapprehends the law and only serves to confuse the issue here. The correct test in final revocation hearings is outlined by the Eleventh Circuit in *Frazier*, and the Court has carefully applied that balancing test here, recognizing the "certain minimal due process requirements" to which Defendant is entitled.

---

[3] In fact, during the hearing, defense counsel conceded that the more important issue was admission of the "Drug Test Reports" when the Alere certifying technician/scientists were not available to testify at the final hearing.
[4] *See, e.g.*, Matthewman, *Crawford's Impact on Florida Criminal Law,* 80 Fla.B.J. 10 (April 2006).

Next, as to the Alere personnel who are located in Louisiana or elsewhere, the Government represented that they had reviewed Alere's fee schedule, and it would have cost thousands of dollars to bring all of the certifying technicians/scientists into court to testify. In deciding not to call the Alere personnel as witnesses at the final hearing, the Government also relied in part on *United States v. Evans*, 662 F. App'x 681, 684 (11th Cir. 2016) ("Here, the district court did not abuse its discretion or violate Defendant's due process rights by admitting the laboratory reports without the testimony of the chemists who prepared them. The record shows that the district court and the parties thoroughly discussed the requirements of the balancing test as established by *Frazier*, and that the court carefully considered the issue.").

After carefully engaging in the requisite balancing test, the Undersigned determined that the Defendant's right to confront the witnesses from Alere was outweighed by the Government's asserted reasons for denying confrontation—that the witnesses were located out of state, that calling them would be expensive and unwieldy, that the documents are legitimate on their face and corroborate each other, and that the documents solely consist of routine chain custody and drug test result information. Requiring the Government to call all of the Alere forensic analysts would be unnecessarily placing form over substance and would unnecessarily lengthen the hearing and cause great expense to the Government. The Court noted that Defendant is only entitled to minimal due process requirements at a final revocation hearing pursuant to the applicable case law. Moreover, the Court again reiterated that the large number of positive drug tests and Defendant's admitted history of violating conditions of supervision by abusing an illegal substance corroborated Exhibit 1. Finally, the Court explained that this case is not one in which it is necessary for the Government to be required to call the Alere drug test analysts at the final revocation hearing.

9

**Analysis**

In light of the evidence and testimony presented, this Court concludes that the Government has shown, by a preponderance of the evidence, that Defendant violated a mandatory condition of his supervision by unlawfully possessing or using a controlled substance—marijuana—on multiple different dates, as alleged in Violations # 1-9 in the Superseding Petition. The testimony of Officer Schur, which this Court finds to be credible, in conjunction with Government's Exhibit 1, which this Court finds to be reliable, establish those violations.

The Court also concludes that the Government has shown, by a preponderance of the evidence, that Defendant violated a standard condition of his supervision by failing to follow the instructions of the probation officer in that, on October 3, 2023, he was instructed to submit to weekly drug testing and, on November 3, 9, 17, 22, and December 1, 2023, he failed to comply. Officer Schur testified that Defendant did, indeed fail to submit to weekly drug testing on those dates. Defense counsel did not call into question this testimony but rather claimed that the failure to submit to weekly drug testing was not willful but rather was due to Defendant's financial and transportation issues. However, Defendant presented no real evidence as to his financial and transportation issues. Moreover, defense counsel made certain arguments that are more appropriately brought at the sentencing phase of these proceedings.

**Recommendation**

Thus, the Court **RECOMMENDS** that the District Judge find Defendant guilty of the violation as alleged in the Superseding Petition as all ten violations have been proven by a preponderance of the evidence and set this matter for sentencing.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Robin L. Rosenberg. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 13th day of September 2024.

WILLIAM MATTHEWMAN
United States Magistrate Judge